**Office of the Attorney General**
**Washington, D. C. 20530**

March 21, 2025

MEMORANDUM FOR ALL FEDERAL AGENCIES

FROM: THE ATTORNEY GENERAL

SUBJECT: IMPLEMENTATION OF EXECUTIVE ORDERS 14151 AND 14173: ELIMINATING UNLAWFUL DEI PROGRAMS IN FEDERAL OPERATIONS

## I. INTRODUCTION

This memorandum provides guidance to all federal agencies regarding compliance with Executive Order 14151 of January 20, 2025 (Ending Radical and Wasteful Government DEI Programs and Preferencing) and Executive Order 14173 of January 21, 2025 (Ending Illegal Discrimination and Restoring Merit-Based Opportunity). In those Executive Orders, President Trump directed the immediate termination of race- and sex-based preference programs operating under the banner of "diversity, equity, and inclusion" (DEI) throughout the federal government. As the President explained, "dangerous, demeaning, and immoral race- and sex-based preferences under the guise of so-called 'diversity, equity, and inclusion'" violate the civil rights laws of this country and will no longer be tolerated—least of all within our own government. Executive Order 14173 § 1.

This memorandum sets forth core legal principles that must guide agency compliance efforts to dismantle unlawful DEI initiatives, with more specific implementation instructions to follow.

## II. LEGAL FRAMEWORK

### A. Constitutional Imperatives

The Equal Protection Clause of the Constitution establishes the foundational principle that government may never discriminate based on protected characteristics, including race, except in rare circumstances. As the Supreme Court articulated in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College* ("*SFFA*"), 600 U.S. 181, 206 (2023), the "core purpose" of the Equal Protection Clause is to "do away with all governmentally imposed discrimination based on race." The Court further emphasized that "eliminating racial discrimination means eliminating *all* of it." *Id.* (emphasis added). The Supreme Court has accordingly "forcefully rejected the notion that government actors may intentionally allocate

preference to those who may have little in common with one another but the color of their skin." *Id.* at 220.

Sex-based classifications similarly trigger heightened constitutional scrutiny and cannot stand unless they survive intermediate scrutiny. *See United States v. Virginia*, 518 U.S. 515, 531-33 (1996).

### B. Statutory Prohibitions

Title VII of the Civil Rights Act of 1964 reinforces these constitutional principles by prohibiting employment discrimination. It applies not only to certain private employers and state and local governments, 42 U.S.C. § 2000e-2, but also the federal government. With regard to the federal government, it provides that "[a]ll personnel actions affecting employees or applicants for employment" in Executive Branch agencies "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

Under Title VII, discrimination includes any employment-related action motivated, even in part, by a protected characteristic. 42 U.S.C. § 2000e-2(m); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) (plurality op.). Employment-related actions include actions that affect the terms and conditions of employment, such as hiring, firing, promotion, demotion, selection for interviews, training opportunities, and work assignments.

Congress has enacted similar prohibitions on discrimination across various contexts, including public accommodations (42 U.S.C. § 2000a *et seq.*), education (42 U.S.C. § 2000c *et seq.*), and the receipt of federal funds (42 U.S.C. § 2000d *et seq.*).

## III. PROHIBITED DEI PRACTICES

The following practices violate federal law and must therefore be eliminated immediately:

### A. Direct Preferences Based on Protected Characteristics

Federal policies that give preference to job applicants, employees, or contractors based on race or sex trigger heightened scrutiny under the Constitution's equal protection guarantees and can only survive in rare circumstances.

After *SFFA*, the Supreme Court has recognized only two narrow interests that could potentially justify racial classifications: "remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and "avoiding imminent and serious risks to human safety in prisons." *SFFA*, 600 U.S. at 207. Even in these limited contexts, the means chosen to rectify past wrongs or mitigate prison risks must "fit th[e] compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate racial prejudice or stereotype." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989).

Those prohibitions apply regardless of which demographic group is favored or disfavored. The Supreme Court has clearly established that "the standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a particular classification." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 222 (1995). Title VII likewise protects all individuals from discrimination based on a protected characteristic. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976).

### B. Indirect or Ostensibly Neutral Preferences

Agencies may not circumvent those prohibitions through policies that, while facially neutral, are designed or targeted to favor particular demographic groups. As the Supreme Court has emphasized, "'[t]he Constitution deals with substance, not shadows,' and the prohibition against racial discrimination is 'levelled at the thing, not the name.'" *SFFA*, 600 U.S. at 230. So that which is directly proscribed cannot be achieved indirectly. *Id.*

For example, a federal agency may operate a genuinely race-neutral program that privileges first-generation professionals or individuals from diverse geographic backgrounds. But such a policy may not be designed or implemented with the goal of covertly giving preference to individuals of a particular race or sex. The use of ostensibly neutral criteria—such as promoting "socially disadvantaged groups"—cannot salvage a policy that, in practice and intent, uses race or sex as a proxy for those criteria.

### C. Inducing or Requiring Private Parties to Discriminate

The federal government may not "induce, encourage or promote" private entities to adopt discriminatory policies that the government itself is constitutionally forbidden from adopting. *Norwood v. Harrison*, 413 U.S. 455, 465 (1973). What the Constitution forbids, the government "may not simply establish" through "other means." *SFFA*, 600 U.S. at 230.

Accordingly, federal agencies may not:

- require contractors or grantees to adopt racial or sex-based preferences in hiring, promotion, or staffing;
- encourage contractors or grantees to adopt such policies;
- penalize contractors or grantees that refuse to implement such policies; or
- create financial incentives for contractors or grantees to favor or disfavor groups or individuals on the basis of race, sex, or other protected characteristics.

As the Supreme Court held in *Adarand*, 515 U.S. at 204, even "giving general contractors a financial incentive to hire subcontractors" based in part on "race-based" considerations constitutes a racial classification subject to strict scrutiny.

## IV. IMMEDIATE COMPLIANCE ACTIONS

All federal agencies must take the following steps to ensure compliance with Executive Orders 14151 and 14173 and federal law:

1. **Eliminate Numerical Goals or Targets**: Discontinue any policies that establish numerical goals, targets, or quotas based on race or sex.
2. **Review Hiring and Promotion Criteria**: Ensure all hiring, promotion, and advancement decisions are based solely on merit, qualifications, and job-related criteria, and not race or sex.
3. **Examine Contract and Funding Requirements and Guidance**: Remove any contracting or funding requirement or guidance that induces, requires, or encourages private parties to adopt discriminatory practices.

## V. CONCLUSION

As Justice Thomas observed, "The Constitution abhors classifications based on race" because "every time the government places citizens on racial register and makes race relevant to the provision of burdens or benefits, it demeans us all." *Grutter v. Bollinger*, 539 U.S. 306, 353 (2003) (Thomas, J., concurring in part and dissenting in part). The federal government, as the President has directed, must lead by example in faithfully adhering to the constitutional principle of equal treatment under the law.

The Department of Justice stands ready to assist agencies in complying with these legal requirements. Additional guidance on specific implementation issues will be forthcoming.

Questions about this guidance should be directed to Michael Gates, Deputy Assistant Attorney General, Civil Rights Division (michael.gates2@usdoj.gov).