DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 173594
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MICHAEL A. KEOUGH, SBN 327037
Special Counsel
CARA R. MEYER, SBN 348877
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Fl.
San Francisco, California 94102-5408
Telephone: (415) 554-3959 (Keough)
(415) 554-4212 (Meyer)
Facsimile: (415) 437-4644
E-Mail: Michael.Keough@sfcityatty.org
Cara.Meyer@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO,

Plaintiff,

vs.

UNITED STATES DEPARTMENT OF ENERGY, CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy,

Defendants.

Case No. 3:26-cv-05455-JD

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

| | |
|---|---|
| Hearing Date: | May 13, 2027 |
| Time: | 11 a.m. |
| Judge: | Hon. James Donato |
| Place: | Courtroom 11 - 19th Floor |
| Date Filed: | June 5, 2026 |
| Trial Date: | None Set |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iv

STATEMENT OF RELIEF REQUESTED AND ISSUES TO BE DECIDED ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 2

INTRODUCTION ........ 2

STATEMENT OF UNDISPUTED MATERIAL FACTS ........ 3

- I. President Trump Issues Executive Orders Directing Agency Heads to Reinterpret Nondiscrimination Law and Target DEI ........ 3
- II. Defendants Implement the Anti-DEI EO as a Material Condition for DOE Funding ........ 4
  - A. The Discrimination Condition ........ 4
  - B. The False Claims Act ........ 5
- III. San Francisco Applies for and Receives DOE Funding ........ 5
  - A. DOE's Clean Cities Program is Authorized by Congress to Promote Adoption of Alternative Energy Sources and Educate the Public on its Merits ........ 5
  - B. DOE Awards San Francisco Clean Cities Funding ........ 6
- IV. San Francisco Seeks Relief from the Discrimination Condition ........ 6
- V. San Francisco Suffers Harm While the Discrimination Condition is Enforced ........ 6

LEGAL STANDARD ........ 7

ARGUMENT ........ 8

- I. The Discrimination Condition is Unconstitutional and Unlawful Under the APA ........ 8
  - A. The Discrimination Condition Violates the Separation of Powers ........ 9
    - 1. The Discrimination Condition coerces compliance with a novel anti-DEI agenda unauthorized by Congress ........ 10
    - 2. The Discrimination Condition unlawfully applies to all San Francisco programs ........ 11
    - 3. The Discrimination Condition exceeds statutory authority by requiring San Francisco to concede materiality under the False Claims Act ........ 12
  - B. The Discrimination Condition Violates the Spending Clause ........ 12
    - 1. The Discrimination Condition is vague and ambiguous ........ 13
    - 2. The Discrimination Condition is unrelated to the purpose of DOE funding ........ 15
- II. The Discrimination Condition is Arbitrary and Capricious ........ 16

III. The Discrimination Condition Exceeds the Department's Statutory Authority ....................18

IV. San Francisco is Entitled to Vacatur of the Discrimination Condition....................19

CONCLUSION....................20

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*
155 F.4th 1082 (9th Cir. 2025) .......... 8

*Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*
548 U.S. 291 (2006) .......... 13

*Arrington v. Daniels*
516 F.3d 1106 (9th Cir. 2008) .......... 8

*Barnes v. Gorman*
536 U.S. 181 (2002) .......... 11

*Bennett v. Spear*
520 U.S. 154 (1997) .......... 9

*California v. Bernhardt*
472 F. Supp. 3d 573 (N.D. Cal. 2020) .......... 18

*California v. Dep't of the Interior*
381 F. Supp. 3d 1153 (N.D. Cal. 2019) .......... 18

*California v. Env't Prot. Agency*
72 F.4th 308 (D.C Cir. 2023) .......... 10

*Chicago Women in Trades v. Trump*
773 F. Supp. 3d 592 (N.D. Ill. 2025) .......... 14

*City & Cnty. of San Francisco v. Sessions*
372 F. Supp. 3d 928 (N.D. Cal. 2019) .......... 14, 15

*City & Cnty. of San Francisco v. Trump*
897 F.3d 1225 (9th Cir. 2018) .......... 9, 19

*City of Fresno v. Turner*
No. 25-CV-07070-RS, 2025 WL 2469330 (N.D. Cal. Aug. 27, 2025) .......... 10, 14, 17

*City of Los Angeles v. Barr*
941 F.3d 931 (9th Cir. 2019) .......... 10

*City of San Diego v. U.S. Dep't of Just.*
3:26-cv-00615 (S.D. Cal. Mar. 23, 2026) .......... 14

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*
68 F.4th 864 (4th Cir. 2023) .......... 13

*Cnty. of King v. Turner*
189 F.4th 819, 831 (9th Cir. 2026) .......... *passim*

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
591 U.S. 1 (2020)....18

*F.C.C. v. Fox Television Stations, Inc.*
556 U.S. 502 (2009)....16

*Harrington v. Purdue Pharma L. P.*
603 U.S. 204 (2024)....19

*Hous. Auth. of San Francisco v. Turner*
No. 25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal Nov. 14, 2025) ....18

*Lackey v. Stinnie*
604 U.S. 192 (2025)....18

*Landor v. Louisiana Dep't of Corr. & Pub. Safety*
609 U.S. 59 (2026)....12

*Loper Bright Enters. v. Raimondo*
603 U.S. 369 (2024)....18

*Louisiana Pub. Serv. Comm'n v. FCC*
476 U.S. 355 (1986)....9

*McCrary v. Gutierrez*
No. C-8-15292 RMW, 2010 WL 520762 (N.D. Cal. Feb. 8, 2010)....8

*Mont. Wildlife Fed'n v. Haaland*
127 F.4th 1, 50 (9th Cir. 2025) ....19

*Motor Vehicle Mfrs. Ass'n of U. S., Inc. v. State Farm Mut. Auto. Ins. Co.*
463 U.S. 29 (1983)....16, 17

*Nat'l Fam. Farm Coal. v. Vilsack*
758 F. Supp. 3d 1060 (N.D. Cal. 2024) ....17

*New York v. United States*
505 U.S. 144 (1992)....15

*Occidental Eng'g Co. v. I.N.S.*
753 F.2d 766 (9th Cir. 1985) ....8, 17

*Ohio v. Env't Prot. Agency*
603 U.S. 279 (2024)....16

*Or. Nat. Res. Council v. Thomas*
92 F.3d 792 (9th Cir. 1996) ....16

*Pennhurst State Sch. & Hosp. v. Halderman*
451 U.S. 1 (1981)....12

*San Francisco Unified Sch. Dist. v. AmeriCorps*
789 F. Supp 3d 716 (N.D. Cal. 2025) .......... 14

*Sierra Club v. Bosworth*
510 F.3d 1016 (9th Cir. 2007) .......... 7

*South Dakota v. Dole*
483 U.S. 203 (1987) .......... 12, 15, 16

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*
576 U.S. 519 (2015) .......... 13

*Universal Health Servs., Inc. v. United States*
579 U.S. 176 (2016) .......... 12

*Youngstown Sheet & Tube Co. v. Sawyer*
343 U.S. 579 (1952) .......... 9, 10

**Statutes**

5 U.S.C.
§ 706 .......... 8
§ 706(2) .......... 19, 20
§ 706(2)(A) .......... 16
§ 706(2)(B) .......... 9, 12
§ 706(2)(C) .......... 19

18 U.S.C. § 287 .......... 5

31 U.S.C § 3729 .......... *passim*

42 U.S.C. § 2000d .......... 9, 11

42 U.S.C. § 13231 .......... 5, 11, 15, 19

42 U.S.C. § 13235 .......... 5, 11, 15, 19

42 U.S.C. § 13236 .......... 5

42 U.S.C. § 13255 .......... 5, 11

**Regulations**

28 C.F.R.
§ 85.5(a) .......... 5

**Rules**

Fed. R. Civ. P. 56(a) .......... 7

**Executive Orders**

*Ending Radical and Wasteful Government DEI Programs and Preferencing*
Executive Order No. 14,151, 90 Fed. Reg. 8339 (Jan 29, 2025) ........................................ 3

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*
Executive Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) ........................................ *passim*

**Other Authorities**

Clean Cities & Communities Coalitions, U.S. Dep't of Energy
https://cleancities.energy.gov/coalitions/locations [https://perma.cc/5YSR-3FBQ] ........................ 6

Mission, U.S. Dep't of Energy
https://www.energy.gov/mission [https://perma.cc/2EA3-QTUF] ........................................ 5

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

Notice is hereby given that on May 13, 2027, at 11:00 a.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, 19th Floor, Courtroom 11, before the Honorable James Donato, Plaintiff City and County of San Francisco (collectively "San Francisco" or the "City") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 56 for an order granting San Francisco summary judgment on each of its claims in the Complaint. The City bases this motion on the accompanying memorandum of points and authorities; the accompanying declaration; the request for judicial notice and exhibit attached thereto; the pleadings; the records on file in this action; the Administrative Record filed by Defendants; and any other written or oral evidence or argument as may be presented when or before this motion is heard by the Court.

**STATEMENT OF RELIEF REQUESTED AND ISSUES TO BE DECIDED**

San Francisco moves for summary judgment as to each of the claims in the Complaint that the Discrimination Condition: (1) violates the separation of powers; (2) violates the Spending Clause; (3) is unlawful under the Administrative Procedure Act; (4) is arbitrary and capricious under the Administrative Procedure Act; and (5) is contrary to statutory authority under the Administrative Procedure Act.

This Motion asks the Court: (i) to find that San Francisco is entitled to judgment as a matter of law on its constitutional claims; (ii) to find that San Francisco is entitled to judgment as a matter of law on its claims under the Administrative Procedure Act, 5 U.S.C. section 706(2)(A)-(C); and (iii) to vacate the Discrimination Condition, Section II.L. of the DOE Standard Terms and Conditions.

San Francisco respectfully requests that the Court enter judgment in its favor on each claim in the Complaint on the grounds that the Administrative Record (including the Supplement) and the undisputed evidence show that the Discrimination Condition imposed on Plaintiff's awarded funding is unlawful. The City respectfully requests that this Court vacate the Discrimination Condition.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

More than 30 years ago, Congress established the Clean Cities and Communities Program ("Clean Cities") to advance affordable, efficient, and clean transportation fuels and technologies through the U.S. Department of Energy ("DOE"). San Francisco has been a leader in this field and received these funds since 1994. But now, the City's access to this funding, and all other DOE funding, is threatened by the administration's war against diversity, equity, and inclusion initiatives in contravention of Defendants' constitutional and statutory authority. Defendants have imposed a new condition (the "Discrimination Condition") on all DOE funding that requires recipients to agree to and certify compliance with an interpretation of antidiscrimination law that is legally unsupported, ambiguous, and unlawful under Ninth Circuit precedent.

In their rush to march in lockstep with the administration, Defendants mis-stepped three times. First, by claiming a power to declare new law found nowhere in the Constitution, the Executive Branch has enacted a broad condition that the Ninth Circuit has declared contrary to congressional authorization and so muddied the waters of antidiscrimination law that grantees cannot determine the scope of their legal obligations. Second, feeling presidential pressure to deliver, Defendants skipped the administrative process altogether. And while Defendants may insist that "the President said we could do it," that justification is not an explanation. Third, what has resulted is a Discrimination Condition untethered to any statutory authority, sneaking the President's ideological preferences into funding intended to spark renewable energy development. For each of these independently sufficient reasons, San Francisco respectfully requests the Court grant summary judgment in its favor.

The material facts—the text of the Discrimination Condition, its application to *all* San Francisco programs under threat of False Claims Act liability, its issuance by DOE without a moment's thought at the President direction, and the contrary will of Congress in the Energy Policy Act—are undisputed and fatal as a matter of law. San Francisco is therefore entitled to summary judgment on each of its causes of action: (i) the separation of powers, (ii) the Spending Clause, and (iii) violations of the Administrative Procedure Act for agency action that is arbitrary and capricious, (iv) contrary to the Constitution, and (v) in excess of statutory authority. Whether unconstitutional,

arbitrary and capricious, or in excess of statutory authority, each claim is sufficient for the Court to vacate the Discrimination Condition.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

There is no genuine dispute concerning the material facts of the case.

### I. President Trump Issues Executive Orders Directing Agency Heads to Reinterpret Nondiscrimination Law and Target DEI

On January 20, 2025, President Trump was sworn in for his second term. By the next day, the President had issued a slew of Executive Orders, including two directing executive departments and agencies to "enforce longstanding civil-rights laws" by reinterpreting those same laws. The first order, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, Executive Order No. 14,151, 90 Fed. Reg. 8339 (Jan 29, 2025) ("Government DEI EO") declares that the federal government's support for "illegal and immoral discrimination programs, going by the name 'diversity, equity, and inclusion' (DEI) . . . ends today." Administrative Record and Supplemental Administrative Record, Dkt. Nos. 21-22 at AR-000005 (henceforth cited by Bates number). The second, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, Executive Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) ("Anti-DEI EO"), calls DEI policies "illegal" and proclaims that they not only violate the "text and spirit" of civil rights law but also "undermine our national unity."AR-000001.

In response to the President's EOs, on May 19, 2025, the U.S. Department of Justice ("DOJ") formed a task force to accomplish the President's priorities "through vigorous enforcement of the False Claims Act." *See* Request for Judicial Notice ("RJN") filed concurrently, Ex. A ("Civil Rights Fraud Initiative"). DOJ announced that it considers liability under the FCA a "primary weapon" it will deploy to wage war on DEI programs and has "strongly encourag[ed]" private parties to bring civil suits against grant recipients. *Id.*

The following month, then-Attorney General Pam Bondi issued *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* ("Bondi Memo"). AR-00015. The Bondi Memo purports to "clarif[y] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion

('DEI') programs." *Id.* But the Memo asserts that practices and policies that Congress and the courts have long considered lawful—such as training and educational programs, scholarships, and hiring policies designed to end the exclusion of historically marginalized groups—are unlawful and discriminatory. *See* AR-000018-22 (classifying as unlawful the "prioritiz[ation] [of] candidates from 'underrepresented groups' for admission, hiring, or promotion" and policies that "set[] racial benchmarks or mandate[] demographic representation in candidate pools, such as requiring a certain percentage of finalists to be from 'diverse' backgrounds").

## II. Defendants Implement the Anti-DEI EO as a Material Condition for DOE funding

One month after the Bondi Memo, DOE issued a Financial Assistance Letter ("FAL") to its Contracting and Grants Officers announcing its plans to implement the Anti-DEI EO. AR-000031. The FAL explains that the Anti-DEI EO orders all agencies to "include a requirement for recipients to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws and to agree that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the False Claims Act]." AR-000032.

In April 2026, DOE posted new Standard Terms and Conditions ("Standard Terms") to its website that apply to "all applicable DOE awards." AR-000034.

### A. The Discrimination Condition

Section II.L. of the Standard Terms ("the Discrimination Condition") is titled "Implementation of Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity," mirroring the text of the Anti-DEI EO. AR-000055. The condition requires San Francisco, in order to drawdown funds from any DOE award, to "certif[y] that it does not operate programs promoting diversity, equity, and inclusion that violate any applicable federal anti-discrimination laws." *Id.* On its face, the Discrimination Condition does not define which, of all the City's programs, this certification applies to. Against the backdrop of the Anti-DEI EO and the Bondi Memo, the Discrimination Condition does not define what types of "programs promoting diversity, equity, and inclusion" might violate the agency's understanding of "applicable federal anti-discrimination laws."

### B. The False Claims Act

The Discrimination Condition also requires San Francisco to agree that compliance with "such Federal laws" is "material" for the purposes of the False Claims Act ("FCA"). *Id.* The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Each violation of the FCA is punishable by treble damages plus civil penalties. 31 U.S.C. § 3729(a); *see also* 28 C.F.R. § 85.5(a). The same conduct that the FCA punishes, presentation of a false or fraudulent claim material to the federal government's issuance of payment, may also give rise to criminal liability, including up to five years' imprisonment. 18 U.S.C. § 287.

## III. San Francisco Applies for and Receives DOE Funding

### A. DOE's Clean Cities Program is Authorized by Congress to Promote Adoption of Alternative Energy Sources and Educate the Public on its Merits

In 1992, following successive energy crises, Congress passed the Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776 (1992). The Act required federal and state governments with vehicle fleets to increase their use of vehicles running on alternative fuels. Recognizing that reducing the nation's dependence on oil required state and local investment, Congress further directed the Secretary of Energy to consult with "individuals and organizations with practical experience in the production and use of alternative fuels and alternative fueled vehicles" to establish a public information program "on the benefits and costs of the use of alternative fuels in motor vehicles," 42 U.S.C. § 13231, to obtain commitments from fuel suppliers "in geographically diverse regions," *id.* § 13255, and to create a state and local incentive program "to accelerate the introduction and use" of alternative fuels and vehicles, *id.* § 13235.

Following congressional instructions to "enter into cooperative agreements and joint ventures" with local governments to "demonstrate the feasibility of commercial application of alternative fuels for urban buses" *id.* § 13236, DOE created the Clean Cities Program in 1993. The Program offers technical, informational, and financial resources with concrete objectives: to encourage adoption of alternative energy sources, collect data on its performance, and educate the public in turn. U.S. Dep't of Energy, Mission, https://www.energy.gov/mission [https://perma.cc/2EA3-QTUF]. DOE provides funding through cooperative agreements to local and regional coalitions; the coalitions use the funding

to reduce fuel emissions, improve fuel economy, invest in emerging transportation technologies, and track alternative and renewable fuel usage. Clean Cities & Communities Coalitions, U.S. Dep't of Energy, https://cleancities.energy.gov/coalitions/locations [https://perma.cc/5YSR-3FBQ].

### B. DOE Awards San Francisco Clean Cities Funding

On February 20, 2026, the San Francisco Environment Department ("SF Environment") received an email from DOE inviting San Francisco to apply for 2026 Clean Cities funding through a coalition cooperative grant. AR-000073. DOE then hosted a webinar explaining the importance of coalition partnerships for achieving the Clean Cities Program's goals of facilitating "adoption of alternative fuels, advanced vehicle technologies, and mobility options that enhance the nation's energy, economic, and environmental security across a spectrum of transportation sectors." AR-000084. There is not a single mention of combatting DEI in the announcement email or webinar materials. AR-000073-160.

In March of 2026, as it has for over thirty years, San Francisco applied for the Clean Cities Program coalition funding. AR-000185; Declaration of Tyrone Jue ¶ 7 ("Jue Decl."). A month later, San Francisco received a cooperative award of $130,000 for the period April 1, 2026 through March 31, 2027. AR-000196.

## IV. San Francisco Seeks Relief from the Discrimination Condition

After reviewing the DOE Standard Terms, San Francisco sought relief from the Discrimination Condition. San Francisco filed the operative complaint on June 6, 2026, alleging that the Discrimination Condition violates the separation of powers doctrine, the Spending Clause of the Constitution, and the Administrative Procedure Act ("APA"). Dkt. No. 1. Defendants filed an Answer on August 31, 2026. Dkt. No. 14.

## V. San Francisco Suffers Harm While the Discrimination Condition is Enforced

SF Environment relies on DOE funding to carry out its efforts to advance climate action, environmental justice, and sustainability policies. Jue Decl. ¶ 4. San Francisco has been a Clean Cities coalition member since 1994 and uses this funding to work with vehicle fleets, fuel providers, community leaders, and other stakeholders to identify community-driven choices that save energy and promote the use of alternative fuels and advanced vehicle technologies in transportation. *Id.* ¶ 5. Clean

Cities awards are the only funding mechanism available to SF Environment for direct outreach and engagement with small businesses, residents, and small-and medium-sized fleets that lack the resources to purchase electric vehicles. *Id.* This funding has supported San Francisco to facilitate installing over 1500 electric vehicle chargers and to reduce gasoline use by 6.8 million gallons annually. *Id.*

San Francisco has been unable to draw down on its 2026 Clean Cities Award while the Discrimination Condition remains in effect. *Id.* ¶¶ 4, 9. Nevertheless, San Francisco has completed all required deliverables under the 2026 program, including coordinating the design and launch of the City's new permanent curbside charging permit program and hosting educational webinars on San Francisco's Public EV Charging Map and Nomination Form. *Id.* ¶ 8. In the coming months, SF Environment will need to make its heaviest investment of time and resources to complete its annual Coalition Activity Report, due March 19, 2027. *Id.*

SF Environment typically draws down quarterly reimbursements for program costs associated with Clean Cities work. *Id.* ¶ 9. As of November 1, 2026, SF Environment is eligible to draw down $72,500 of the cooperative award funding. *Id.* The Discrimination Condition continues to put SF Environment in an untenable position, creating budgetary uncertainty as to whether and how long the City can continue to support these activities without being able to seek reimbursement. *Id.* ¶¶ 10-11. If San Francisco does not draw down on its Clean Cities funding by May 1, 2027, it risks losing the funding altogether. *Id.* ¶ 9.

The Discrimination Condition also prevents San Francisco from seeking reimbursement for $68,438 in closeout funding for another DOE award under the Decarbonizing App-based Deliveries in San Francisco Pilot Program. *Id.* ¶ 12. DOE's Standard Terms subject San Francisco to budgetary limbo unless and until the Discrimination Condition is held to be unenforceable. *Id.* ¶¶ 10-14.

## LEGAL STANDARD

Summary judgment is appropriate if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007). Where a plaintiff has challenged a final agency action under the APA, the case on review is a question of law. *McCrary v. Gutierrez*, No. C-8-15292 RMW, 2010 WL 520762, at *2

(N.D. Cal. Feb. 8, 2010) (citing *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)) (explaining that "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did"). "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts it did." *McCrary*, 2010 WL 520762, at *2 (quoting *Occidental Eng'g Co.*, 753 F.2d at 770). Judicial review under the APA is generally limited to "the whole [administrative] record or those parts of it cited by a party[.]" 5 U.S.C. § 706; *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). But "[r]eview of an ultra vires challenge [is not] limited to an administrative record." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025).

## ARGUMENT

This case presents no dispute of any material fact, and San Francisco is entitled to summary judgment on all five of its causes of actions. First, Defendants' actions violate the separation of powers and Spending Clause, and San Francisco is therefore entitled to judgment as a matter of law on its First and Second Causes of Action. Prevailing on *any one* constitutional claim is sufficient for San Francisco to prevail on its Fourth Cause of Action—that Defendants violated the APA by acting contrary to the Constitution. Second, San Francisco is entitled to judgment as a matter of law on its Third Cause of Action, that Defendants' imposition of the Discrimination Condition was arbitrary and capricious under the APA. Finally, the Discrimination Condition exceeds Defendants' authority under the Energy Policy Act, and San Francisco is therefore entitled to judgment on its Fifth Cause of Action—that the Discrimination Condition violates the APA by exceeding Defendants' statutory authority.

### I. The Discrimination Condition is Unconstitutional and Unlawful Under the APA

Congress has not delegated authority to Defendants to condition DOE funding on recipients' agreement to broad terms prohibiting policies based on the administration's preferences rather than the law. In *King County v. Turner*, the Ninth Circuit recently held unlawful grant conditions virtually identical to the Discrimination Condition because they (1) conditioned funds on local government programs and activities that do not receive federal financial assistance, and (2) imposed the agency's

own definition of "materiality" in tension with the FCA.[1] 189 F.4th 819, 831 (9th Cir. 2026). Because agencies have no power to act unless Congress has conferred that power, Defendants' imposition of the Discrimination Condition violates the separation of powers. On these grounds alone, San Francisco is entitled to judgment as a matter of law and vacatur of the Discrimination Condition.

Even if Congress had delegated authority, the Discrimination Condition would nonetheless be unconstitutional because, in contravention of the spending power, it is ambiguous, and it is not germane to the purposes of the statute that authorizes the Clean Cities Program, nor any statute that authorizes grants administered by DOE.

San Francisco is thus entitled to judgment as a matter of law on its two constitutional claims (First and Second Causes of Action), and its APA claim (Fourth Cause of Action) under section 706(2)(B) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity.").[2]

### A. The Discrimination Condition Violates the Separation of Powers

The Constitution grants Congress—and only Congress—the power of the purse. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018). The President, by contrast, does not make laws. *Id.* at 1232; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952). This means that the Executive Branch "has no power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). And its agencies, in turn, cannot impose conditions on federal funding without statutory authority. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019).

---

[1] The panel considered conditions imposed by HUD that require a grant recipient to (1) certify "that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964"; and (2) agree "that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [the False Claims Act, 31 U.S.C. § 3729(b)(4)]." *Cnty. of King*, 189 F.4th at 829-31.

[2] Defendants' actions are subject to APA review. Defendants' inclusion of the Discrimination Condition in DOE's Standard Terms marks the "consummation of the agency's decisionmaking process" such that accessing DOE funds requires adherence to these conditions. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The inclusion of the Discrimination Condition is an action "by which rights or obligations have been determined," and "from which legal consequences will flow." *Id.* at 178 (quotations omitted). San Francisco must either accept the Discrimination Condition—and open itself up to potentially significant legal consequences based on unlawful, contradictory, and ambiguous terms—or surrender these much-needed federal funds.

### 1. The Discrimination Condition coerces compliance with a novel anti-DEI agenda unauthorized by Congress

The Discrimination Condition violates the separation of powers by using DOE grants to enact the President's policy preferences. It is undisputed that Defendants issued an FAL to "implement[] the requirements" of the Anti-DEI EO, "and inform[] DOE Contracting and Grants Officers of the DOE Award term that is created to comply with the EO." AR-0000032. The use of the word "comply" is telling. Laying out the substantive terms of what would become the Discrimination Condition, Defendants treated the Anti-DEI EO as a command to impose the condition and acted accordingly. But EOs and similar presidential pronouncements are not laws, and they are binding only to the extent they concern the internal management of the Executive Branch. *See California v. Env't Prot. Agency*, 72 F.4th 308, 318 (D.C Cir. 2023). The President, therefore, cannot use EOs as backdoor mechanisms for restrictions on grants that are unrelated to and inconsistent with the underlying statute. *See City of Fresno v. Turner*, No. 25-CV-07070-RS, 2025 WL 2469330, at *6 (N.D. Cal. Aug. 27, 2025). And that is precisely what the Discrimination Condition purports to do by requiring compliance with the President's interpretations of antidiscrimination law. The agency is free to treat presidential directives as marching orders, but it cannot demand that grant recipients fall in line.

When "sweeping executive orders collide with statutory text," statutory text prevails. *Cnty. of King*, 189 F.4th at 825. The reason is simple enough: the President's authority to instruct an agency to impose funding conditions must "flow from either the Constitution or Congressional enactment." *Id*. (citing *Youngstown*, 343 U.S. at 585). Both sources are missing here. Unlike the President's ability to direct internal agency business, *see* U.S. Const. Art. II., § 1, attaching conditions to federal grants is the exclusive constitutional province of Congress. *Cnty. of King*, 189 F.4th at 828.

Moreover, no statute, including the Energy Policy Act, conditions the provision of DOE funding on compliance with a prohibition on all forms of DEI programs, nor has Congress delegated to Defendants the authority to attach such a condition unilaterally. Indeed, the Energy Policy Act is specific in its aims and narrow in its delegations. For instance, when Congress directed the Secretary of Energy to establish a public information program "on the benefits and costs of the use of alternative fuels in motor vehicles," it instructed the Secretary to provide "relevant and objective information . . .

including environmental performance, energy efficiency, domestic content, cost, maintenance requirements, reliability, and safety." 42 U.S.C. § 13231. Congress then ordered the Secretary to obtain commitments from fuel suppliers "in geographically diverse regions" and to "periodically report to the Congress on the result of [those] efforts" *id.* § 13255. And when authorizing the Secretary to issue regulatory guidelines for the state and local incentive program "to accelerate the introduction and use" of alternative fuels, Congress only sanctioned guidelines that address "the development, modification, and implementation" of those programs. *id.* § 13235. Nowhere in the statutory text is there any discussion of DEI or its effect on fuel production.

**2. The Discrimination Condition unlawfully applies to all San Francisco programs**

The Discrimination Condition requires San Francisco to certify that it does not operate "programs promoting diversity, equity, and inclusion that violate any applicable federal anti-discrimination laws." The broad terms of this certification encompass *all* San Francisco's programs, not merely those that receive federal funds.

Congress has not delegated to Defendants the power to police programs that do not receive federal funding. Even if Defendants were to argue that they are authorized to enforce anti-discrimination law under Title VI, the Ninth Circuit has foreclosed that argument. Agencies may only effectuate Title VI's mandate "with respect to such program" and in a manner "consistent with the achievement of the objectives of the statute authorizing the financial assistance." 42 U.S.C. § 2000d-1; *id* § 2000d (covering discrimination "under any program or activity receiving Federal financial assistance"). Title VI therefore covers only "federally funded programs and activities" and does not reach "*other* activities that grant recipients undertake." *Cnty. of King*, 189 F.4th at 830 (citing *Barnes v. Gorman*, 536 U.S. 181, 185 (2002)). The Discrimination Condition accordingly exceeds the limits imposed by Congress because it applies not just to the programs receiving DOE funding, but to all programs operated by San Francisco. *Id.*

#### 3. The Discrimination Condition exceeds statutory authority by requiring San Francisco to concede materiality under the False Claims Act

The Discrimination Condition also requires San Francisco to agree that "[c]ompliance with such Federal laws is material" under the False Claims Act. This condition is "in tension with the FCA itself." *Cnty. of King*, 189 F.4th at 831.

FCA liability, which carries steep penalties, including treble damages, ordinarily attaches only if an alleged misrepresentation was "material to the Government's payment decision"—an element the Supreme Court has called "demanding." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 192, 194 (2016). Congress defined "material" to require a court's objective inquiry into what has a "tendency to influence" the government, not what the government "deem[s]" important." *Id.* at 193–94 (quoting 31 U.S.C. § 3729(b)(4)). Congress has not delegated to Defendants the statutory authority to define "materiality" under the FCA. "By purporting to impose its own definition of what is 'material,' the government attempts an end run" around Congress's authority "into an area in which it has no jurisdiction." *Cnty. of King*, 189 F.4th at 831(quotations omitted).

Because there is no freestanding presidential power in the Constitution to declare law and no statutory authority for the breadth of the Discrimination Condition, Defendants violated the separation of powers and took actions "contrary to constitutional right, power, privilege, or immunity." *See* 5 U.S.C. §706(2)(B). Accordingly, San Francisco is entitled to summary judgment on its First and Fourth Causes of Action.

### B. The Discrimination Condition Violates the Spending Clause

When Congress exercises the spending power, it can only attach conditions that are (i) set forth unambiguously, (ii) established before the grantee accepts the terms of the grant award, and (iii) related to the subject matter of the grant program. See *South Dakota v. Dole*, 483 U.S. 203, 207 (1987); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). This narrow power derives constitutional authority only from the consent of grant recipients to the contractual bargain. *See Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 609 U.S. 59, 68 (2026). There can be no deal when the grantee cannot readily ascertain what it would take to comply. *Arlington Cent. Sch.*

*Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). Here, the Discrimination Condition violates the Spending Clause because its terms are ambiguous and unrelated to the Energy Policy Act.

**1. The Discrimination Condition is vague and ambiguous**

The Executive Branch has been equivocal about what kind of conduct violates federal antidiscrimination law, rendering the Discrimination Condition ambiguous under the Spending Clause. The Discrimination Condition requires the City to "certif[y] that it does not operate programs promoting diversity, equity, and inclusion that violate any applicable federal anti-discrimination laws." AR-000055. What type of DEI programs this might cover is indiscernible. The President, for one, has made his hostility to DEI policies clear by proclaiming that they are "illegal" and that they "undermine national unity." AR-000001. Meanwhile, the Bondi Memo purported to "clari[fy] the application of federal antidiscrimination laws" to DEI programs. AR-000015. But in providing executive agencies with guidance, the Bondi Memo asserts that training and educational programs, scholarships, and hiring policies that support historically disadvantaged groups are illegal. AR-000018. Moreover, the Memo claims, even the use of "[f]acially neutral criteria" violates antidiscrimination law if those criteria "function as proxies for protected characteristics." AR-000019.

Yet these interpretations of federal law contradict decades of constitutional and statutory consensus. *See, e,g.*, *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885-86 (4th Cir. 2023) (The Supreme Court has "consistently declined to find constitutionally suspect" the adoption of neutral criteria "correlated with race") (citing *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)). This tension between what the Executive Branch believes and what Congress has passed and courts have held breeds uncertainty about which of those two versions of antidiscrimination law governs grantees' legal obligations.

The Discrimination Condition is a stark illustration of Defendants' doublespeak. On one hand, the Discrimination Condition is itself titled "Implementation of Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Oppurtunity."AR-000055. Unlike anti-discrimination certifications of the past, then, the Standard Terms expressly tie the condition to the "policy of the United States" reflected in the EO. *Id.* But the Discrimination Condition still claims to prohibit "programs promoting diversity, equity, and inclusion that violate any applicable federal anti-

discrimination laws." *Id.* A natural question to ask, then, is whether the Discrimination Condition incorporates the views in the Bondi Memo. The Executive Branch itself has not been entirely consistent on this score. Here, for instance, Defendants have contended that the "July Bondi Memo speaks for itself and is the best evidence of its contents." Answer to Compl., Dkt. 14, ¶¶ 27-29. Elsewhere, DOJ has referred to the Memo as an "extraneous policy and guidance document[] that [was] nowhere mentioned in Plaintiffs' award package." Resp. in Opp'n to Mot. at 4, 8, *City of San Diego v. U.S. Dep't of Just.*, 3:26-cv-00615 (S.D. Cal. Mar. 23, 2026). If the various agencies of the Executive Branch are not on the same page about what "applicable" antidiscrimination law means, grantees cannot possibly know any better.

Defendants have also raised the cost of ambiguity by requiring grantees to certify FCA materiality. Without clarity on what body of antidiscrimination law governs its certification, San Francisco is at a heightened risk of a finding that it has made a false statement under the FCA, which heavily penalizes such conduct. *See* 31 U.S.C. § 3729 (providing for treble damages on FCA claims). As the Ninth Circuit has recently emphasized, whether the government argues that certification only provides notice or serves as a piece of evidence does not change the fact that "if the government enters litigation with such a forceful precertification in hand, it would need to do less to establish materiality than it would without one." *Cnty. of King*, 189 F.4th at 832. And considering the government's overt enthusiasm to wield the FCA as a cudgel, the lack of clarity appears to be more of a feature than a bug of that effort. *See* RJN, Ex. A ("Civil Rights Fraud Initiative").

Several courts in this and other districts have been skeptical of the government's sleight of hand when it fails to "clarify what conduct is proscribed." *San Francisco Unified Sch. Dist. v. AmeriCorps,* 789 F. Supp 3d 716, 749 (N.D. Cal. 2025) (quoting *City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 950 (N.D. Cal. 2019)); *accord City of Fresno*, 2025 WL 2469330, at *5 (N.D. Cal. Aug. 27, 2025); *Chicago Women in Trades v. Trump*, 773 F. Supp. 3d 592, 603 (N.D. Ill. 2025) (recognizing the meaning of DEI conditions "is left entirely to the imagination"). That logic applies here with equal force and entitles San Francisco to summary judgment on its Second and Fourth Causes of Action.

### 2. The Discrimination Condition is unrelated to the purpose of DOE funding

The Discrimination Condition also violates the spending power because it bears no relationship to the purpose of San Francisco's DOE grants. Conditions imposed on federal grants, whether by Congress directly or agencies through delegated authority, must be "reasonably related to the purpose of the expenditure." *New York v. United States*, 505 U.S. 144, 172 (1992) (citation omitted); *see also Dole*, 483 U.S. at 207, 209. Without "some relationship" between spending conditions and "the purpose of the federal spending," "the spending power could render academic the Constitution's other grants and limits of federal authority." *New York*, 505 U.S. at 167; *see also Sessions*, 349 F. Supp. 3d at 960 (holding conditions on Byrne JAG funding regarding immigration enforcement lacked "any relationship to (and in fact interfere[d] with) the criminal justice priorities . . . [of] the Byrne JAG statute").

As discussed above, Congress spelled out its aims in the Energy Policy Act: to promote renewable energy development through collaborative relationships with state and local governments innovating in the field. *See* 42 U.S.C. § 13231 *et. seq*. Congress also directed that DOE take a data-driven approach to grant funding and disseminate information to the public. *Id.* § 13235. DOE, by its own account of the FY 2026 funding cycle, continues to regard the goal of the Clean Cities Program as facilitating "adoption of alternative fuels, advanced vehicle technologies, and mobility options that enhance the nation's energy, economic, and environmental security across a spectrum of transportation sectors." AR-000084.

If anything, the Discrimination Condition is contrary to the information-sharing objectives of DOE grant funding. The Energy Policy Act's statutory framework involves engagement with "geographically diverse regions" and using funding to "accelerate the introduction and use" of alternative fuels and vehicles. 42 U.S.C. §§ 13235-13255. This makes sense. DOE funds allow Cities on the cutting edge of technological and energy innovation to operate pilots—such as the e-bikes and electric vehicles programs San Francisco intends to operate—that then serve as models for other jurisdictions. *See* Jue Decl. ¶¶ 5,12. However, the Discrimination Condition implements an EO that targets "critical and influential institutions of American society" that the President has accused of "adopt[ing] and actively us[ing] dangerous, demeaning and immoral race-and sex-based

preferences."AR-00001. That is hardly collaborative rhetoric, and—more to the point—illustrates the tension between implementing the EO and Congress's plan.

The Discrimination Condition—at the level both of the individual grantee and the coalitions that Congress created—is not "reasonably calculated" to promote renewable energy development. *See Dole*, 483 U.S. at 207, 209 ("[C]onditions on federal grants" must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended."). San Francisco is therefore entitled to summary judgment on its Second and Fourth Causes of Action.

## II. The Discrimination Condition is Arbitrary and Capricious

Including a Discrimination Condition in Standard Terms affecting all DOE funding awards is arbitrary and capricious and should be set aside under Section 706(2)(A) of the APA. Agency action is arbitrary and capricious where the action is not "reasonable" or "reasonably explained." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024) (cleaned up). An agency must offer "a satisfactory explanation for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor simply ignore "an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U. S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). When an agency changes policy as it is free to do, it must be clear that its position has evolved, explain any factual circumstances that justify the change, and account for reliance interests engendered by the prior policy. *F.C.C. v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009).

Defendants imposed the Discrimination Condition in an arbitrary and capricious manner for three independent reasons.

***First***, the Administrative Record conveys no analysis of a connection between the Discrimination Condition and the purpose of any DOE grant program. The only indication of the agency's reasoning for the Discrimination Condition is the August 2025 FAL which notes that EO 14173 "orders all executive departments and agencies" to "include a requirement for recipients to certify" to exactly what the Discrimination Condition requires. AR-000032. To be sure, the agency could have gone through the administrative process and concluded that the Discrimination Condition was at least not inconsistent with statutory objectives. *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (stating that whether an agency has overlooked an important aspect of a problem

"turns on what a relevant substantive statute makes important"); *see also Nat'l Fam. Farm Coal. v. Vilsack*, 758 F. Supp. 3d 1060, 1071 (N.D. Cal. 2024) ("It is well established that, in a suit brought under the APA to review agency action, 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'") (quoting *Occidental Eng'g Co.*, 753 F.2d at 769). But there is no indication that Defendants even acknowledged their statutory obligations, so much so that the condition is applied agency-wide with no reference to, let alone analysis of, individual grant programs. As discussed above, the only evidence of the agency's reasoning is its interpretation in the FAL that it needed to introduce the Discrimination Condition to "comply" with the Anti-DEI EO. *See supra* Section I.A. But that does not *explain* why imposing the condition has anything to do with any underlying statute authorizing DOE grants or awards. Instead, this emphasis on presidential directives amounts to reliance on "factors which Congress has not intended [the agency] to consider" and is arbitrary and capricious. *See State Farm*, 463 U.S. at 43; *see also City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *8 (N.D. Cal. Sept. 23, 2025) (indicating that actions furthering presidential directive are not exempt from arbitrary-and-capricious review) (collecting cases).

***Second***, the agency has changed its policy position without acknowledging that it is doing so. *See City of Fresno*, 2025 WL 2721390, at *8 (emphasizing that conditions implementing the President's Executive Orders "reflect changes in agency position which require . . . an explanation of reasoning"). As discussed above, the Discrimination Condition is contradictory on its face. It both purports to apply antidiscrimination law and incorporates an EO that announces a new era of civil rights by interpreting "longstanding Federal civil-rights laws" in ways that depart from decades of judicial and congressional consensus. *See supra* Section I.B. But just because the EO treats its interpretation of law as self-evident and claims to reflect the present state of play does not make it so. If—as the President has claimed openly— the EOs are a shift from the policies of the prior administration, then that change needs to be explained in the Administrative Record. Such reasoning about the substance of the Condition, whatever it was, is missing here.

***Third***, and relatedly, Defendants failed to weigh grantees' reliance interests in deciding to impose the Discrimination Condition. When changing policy positions, an agency must consider

"alternatives . . . within the ambit of existing policy" and weigh "significant" reliance interests against "competing policy interests." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30, 33 (2020) (cleaned up). But there is no evidence in the Administrative Record that Defendants considered how grantees would be affected by the Discrimination Condition. There is similarly no evidence that DOE ever considered alternatives or not imposing the Condition at all. As discussed above and corroborated by the FAL, Defendants felt that the EO bound them to create the Discrimination Condition. AR-000032. That is no reason, however, to skip any form of due diligence on the matter.

Defendants' mistake is the same any way you slice it: compliance with presidential directives is no substitute for reasoned decision-making. And the Administrative Record is devoid of any reasoning at all. That will not do. *See, e.g.*, *Hous. Auth. of San Francisco v. Turner*, No. 25-cv-08859-JST, 2025 WL 3187761, at *19 (N.D. Cal Nov. 14, 2025) (finding that a letter from the Secretary of Housing and Urban Development citing "compliance" with the President's Executive Orders as reasoning for imposing grant conditions was "no explanation at all"); *California v. Bernhardt*, 472 F. Supp. 3d 573, 600–01 (N.D. Cal. 2020) ("While the Executive branch holds the power to issue executive orders, an agency cannot flip-flop regulations on the whims of each new administration."); *California v. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1169–70 (N.D. Cal. 2019) ("conclusory assertions" regarding compliance with Executive Orders were inadequate "given that [the agency] failed to provide any data or analysis to support them").

In the absence of any evidence of reasoned decision-making, Defendants' imposition of the Discrimination Condition is arbitrary and capricious, and San Francisco is entitled to summary judgment on its Third Cause of Action on that basis.

**III. The Discrimination Condition Exceeds the Department's Statutory Authority**

"When interpreting a statute, we begin with the text." *Lackey v. Stinnie*, 604 U.S. 192, 199 (2025). After all, the APA directs a reviewing court to "effectuate the will of Congress" by giving meaning to statutory delegations without deference to agency interpretations. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-95 (2024). That inquiry controls here because the Discrimination Condition "can only be [a] creature of statute" and the "power to attach funds is incident to the

spending power, which is exclusively committed to Congress." *Cnty. of King*, 189 F.4th at 828 (quoting *San Francisco v. Trump*, 897 F.3d at 1232) (quotation marks omitted).

As discussed above, no statute authorizes Defendants to prohibit lawful DEI programs, to define "materiality" under the FCA, or to condition funding on San Francisco's administration of programs that are not funded by DOE. *See supra* Section I.A. Moreover, as the Energy Policy Act illustrates, Congress constrained the discretion of the Secretary who heads the Department. Indeed, the Act is specific about the kinds of information the Secretary is supposed to gather—namely, data on "environmental performance, energy efficiency, domestic content, cost, maintenance requirements, reliability, and safety." 42 U.S.C. § 13231. And it is precise about the kinds of regulatory guidelines the Secretary is supposed to implement—namely those addressing "the development, modification, and implementation" of those programs. *id.* § 13235. Each time Congress laid out what programs it intended to create, it offered concrete metrics for the Secretary's reports or guided his discretion by tying it to the energy and environmental concerns of the statue. Such specificity is crucial because it leaves little room for interpretation. And, more to the point, it demonstrates just how ill-suited DOE statutes are to the kind of "roving commission to enforce orthogonal policy objectives" that Defendants apparently believe the agency to be. *See Cnty. of King*, 189 F.4th at 836 (quoting *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 220 (2024)) (quotation marks omitted). Because there is no basis in any statute to prohibit all lawful DEI programs or to define "materiality" under the FCA, the Discrimination Condition is invalid.

Nothing in the Administrative Record changes this result, and San Francisco is therefore entitled to summary judgment on its APA claim that the Discrimination Condition is in excess of statutory authority (Fifth Cause of Action). *See* 5 U.S.C. § 706(2)(C).

**IV. San Francisco is Entitled to Vacatur of the Discrimination Condition**

Under the APA, a court "shall . . . hold unlawful and set aside agency action[s]" that are contrary to constitutional right, arbitrary and capricious, or in excess of statutory authority. 5 U.S.C. § 706(2). "[V]acatur and remand is the default remedy under the APA[.]" *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025). San Francisco has shown multiple ways in which the

Discrimination Condition violates the APA. This Court should vacate the Discrimination Condition in its entirety.

**CONCLUSION**

For these reasons, San Francisco respectfully requests that the Court enter judgment in Plaintiff's favor as to each count in their Complaint and vacate the Discrimination Condition under 5 U.S.C. § 706(2).

Dated: October 30, 2026

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
MICHAEL A. KEOUGH
Special Counsel
CARA R. MEYER
Deputy City Attorney

By: /s/ *Cara R. Meyer*
CARA R. MEYER
Attorney for Plaintiff
CITY & COUNTY OF SAN FRANCISCO